IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JEREMY WILLIAMS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Case No. _____ |
| v. | ) ) |
| | ) JURY TRIAL DEMANDED |
| RUBY TUESDAY, INC., STEPHEN I. SADOVE, JAMES F. HYATT, II, F. LANE CARDWELL, JR., MARK W. ADDICKS, KEVIN T. CLAYTON, DONALD E. HESS, BERNARD LANIGAN JR., JEFFREY J. O'NEILL, RTI HOLDING COMPANY, LLC, and RTI MERGER SUB, LLC, | ) ) CLASS ACTION ) ) ) ) ) ) |
| Defendants. | ) ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on October 16, 2017 (the "Proposed Transaction"), pursuant to which Ruby Tuesday, Inc. ("Ruby Tuesday" or the "Company") will be acquired by RTI Holding Company, LLC ("Parent") and its wholly-owned subsidiary, RTI Merger Sub, LLC ("Merger Sub," and together with Parent, "NRD"), which are affiliates of NRD Capital Management II, LLC, NRD Ventures, LLC, and NRD Partners II, L.P.

2. On October 16, 2017, Ruby Tuesday's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the

"Merger Agreement") with NRD. Pursuant to the terms of the Merger Agreement, shareholders of Ruby Tuesday will receive $2.40 in cash for each share of Ruby Tuesday common stock they own.

3. On October 31, 2017, defendants filed a Preliminary Proxy Statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Ruby Tuesday common stock.

9. Defendant Ruby Tuesday is a Georgia corporation and maintains its principal executive offices at 333 East Broadway Avenue, Maryville, Tennessee 37804. Ruby Tuesday's common stock is traded on the NYSE under the ticker symbol "RT."

10. Defendant Stephen I. Sadove ("Sadove") is the Chairman of the Board of Ruby Tuesday.

11. Defendant James F. Hyatt, II ("Hyatt") is a director and the President and Chief Executive Officer ("CEO") of Ruby Tuesday.

12. Defendant F. Lane Cardwell, Jr. ("Cardwell") is a director of Ruby Tuesday, and served as interim President and CEO of the Company between September 2016 and April 2017.

13. Defendant Mark W. Addicks ("Addicks") is a director of Ruby Tuesday.

14. Defendant Kevin T. Clayton ("Clayton") is a director of Ruby Tuesday.

15. Defendant Donald E. Hess ("Hess") is a director of Ruby Tuesday.

16. Defendant Bernard Lanigan, Jr. ("Lanigan") is a director of Ruby Tuesday.

17. Defendant Jeffrey J. O'Neill ("O'Neill") is a director of Ruby Tuesday.

18. The defendants identified in paragraphs 10 through 17 are collectively referred to herein as the "Individual Defendants."

19. Defendant Parent is a Delaware limited liability company and a party to the Merger Agreement.

20. Defendant Merger Sub is a Georgia limited liability company, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Ruby Tuesday (the "Class"). Excluded from the Class are defendants herein and

any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of October 24, 2017, there were approximately 60,690,527 shares of Ruby Tuesday common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company*

28.     The first Ruby Tuesday restaurant was opened in 1972 in Knoxville, Tennessee near the campus of the University of Tennessee.  The Ruby Tuesday concept, which at the time consisted of 16 restaurants, was acquired by Morrison Restaurants Inc. ("Morrison") in 1982.  During the following years, Morrison grew the concept to over 300 restaurants.  In a spin-off transaction that occurred on March 9, 1996, shareholders of Morrison approved the distribution of two separate businesses of Morrison to its shareholders, Morrison Fresh Cooking, Inc. ("MFC") and Morrison Health Care, Inc. ("MHC").  In conjunction with the spin-off, Morrison was reincorporated in the State of Georgia and changed its name to "Ruby Tuesday, Inc."

29.     The Company owns, operates, and franchises the Ruby Tuesday casual dining restaurant chain and operates in the bar and grill segment of the casual dining industry.  As of June 6, 2017, the Company owned and operated 543, and franchised 62, Ruby Tuesday restaurants.  Of the 62 franchised Ruby Tuesday restaurants, 17 were operated by domestic franchisees and 45 were operated by international franchisees.  Ruby Tuesday restaurants are located in 41 states, 14 foreign countries, and Guam.  Ruby Tuesday's Company-owned and operated restaurants are concentrated primarily in the Southeast, Northeast, Mid-Atlantic, and Midwest of the United States.

30.     In August 2016, Ruby Tuesday announced the launch of its "Fresh Start" initiatives which were intended to streamline the Company's organization, improve financial profitability, and ultimately create long-term value for its shareholders.  The Fresh Start initiatives were developed to drive more significant top line growth and profitability over time.

31. Notwithstanding the launch of the Fresh Start initiates, Ruby Tuesday announced on March 13, 2017 that the Board had authorized an exploration of strategic alternatives, which ultimately resulted in the Board entering into the Merger Agreement with NRD.

32. On October 16, 2017, the Board caused the Company to enter into the Merger Agreement, pursuant to which the Company will be acquired by NRD. Pursuant to the terms of the Merger Agreement, NRD will acquire all of Ruby Tuesday's outstanding common stock for $2.40 per share in cash.

*The Proxy Statement Omits Material Information, Rendering It False and Misleading*

33. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

34. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

35. The Proxy Statement omits material information regarding Ruby Tuesday's financial projections, as well as the valuation analyses performed by the Company's financial advisor in connection with the Proposed Transaction, UBS Securities LLC ("UBS").

36. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

37. The Proxy Statement discloses certain Ruby Tuesday projections for non-GAAP (generally accepted accounting principles) metrics, including "Restaurant Level EBITDA" and Adjusted EBITDA, but it fails to provide stockholders with the necessary line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

38. To avoid misleading stockholders with non-GAAP financial measures in business combinations such as the Proposed Transaction, publicly traded companies must provide a reconciliation of the differences between the non-GAAP financial measures with the most comparable financial measures calculated and presented in accordance with GAAP. As such, stockholders are entitled to the line item projections used to calculate the Company's non-GAAP projections or a reconciliation of the non-GAAP projections to the most comparable GAAP measures.

39. With respect to UBS's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the discount rate range of 9.5% to 10.5% used by UBS in its analysis; and (ii) the terminal exit multiples implied by UBS's analysis.

40. With respect to UBS's Selected Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by UBS in the analysis. The Proxy Statement also fails to disclose the LTM EBITDA multiple for Ruby Tuesday used by UBS in its analysis.

41. Similarly, with respect to UBS's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by UBS in the analysis. Notably, despite the fact that UBS observed that the median and

7

mean NTM EBITDA multiples in the analysis were 6.9x and 7.5x, respectively, UBS selected and applied a multiples range of only 5.8x to 7.0x to Ruby Tuesday's NTM EBITDA.

42. Without the disclosure of the multiples observed in each of UBS's selected transactions and public companies analyses, stockholders cannot assess the reliability of UBS's analyses and determine the appropriateness of the multiples ranges selected by UBS, or the comparability of each of the selected transactions and companies.

43. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Certain Financial Projections;" and (ii) "Opinion of Ruby Tuesday's Financial Advisor."

44. The Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

45. The Proxy Statement indicates that, in connection with the sales process run by the Board in 2017, the Company entered into confidentiality agreements with at least 23 parties that expressed an interest in acquiring the Company. According to the Proxy Statement, "[a]ll of the confidentiality agreements contained a customary standstill provision prohibiting, among other things, the counterparty from acquiring shares of Ruby Tuesday common stock and waging a proxy contest or other shareholder activism campaign."

46. The Proxy Statement, however, fails to disclose whether the standstill provisions contain "don't ask, don't waive" provisions that are or were preventing those counterparties from even requesting that the Board waive the standstill provisions so that the interested parties can submit superior offers to acquire the Company.

8

Case 3:17-cv-00499-HSM-CCS   Document 1   Filed 11/16/17   Page 8 of 12   PageID #: 8

47. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

48. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Ruby Tuesday's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Ruby Tuesday

49. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

50. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Ruby Tuesday is liable as the issuer of these statements.

51. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

52. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

9

54. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

55. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

56. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and NRD

57. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

58. The Individual Defendants and NRD acted as controlling persons of Ruby Tuesday within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Ruby Tuesday and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

59. Each of the Individual Defendants and NRD was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

60. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged

herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

61. NRD also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

62. By virtue of the foregoing, the Individual Defendants and NRD violated Section 20(a) of the 1934 Act.

63. As set forth above, the Individual Defendants and NRD had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.  Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.  In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.  Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

11

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: November 16, 2017

Respectfully submitted,

**NEAL & HARWELL, PLC**

*s/ Philip N. Elbert*
Philip N. Elbert, Bar No. 009430
Jeffrey A. Zager, Bar No. 032451
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713 – Telephone
(615) 726-0573 – Facsimile

*Counsel for Plaintiff*

**OF COUNSEL:**

**RIGRODSKY & LONG, P.A.**
2 Righter Parkway, Suite 120
Wilmington, DE 19803
Telephone: (302) 295-5310
Facsimile: (302) 654-7530

12
Case 3:17-cv-00499-HSM-CCS   Document 1   Filed 11/16/17   Page 12 of 12   PageID #: 12